56-1992

# APPLICATION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254 BY A PERSON IN STATE CUSTODY

| United States District Court | Eastern District of Michi | Case: 2:07-cv-15166<br>Judge: Steeh, George Caram<br>Referral MJ: Komives, Paul J |
|---|---|---|
| **Name:**<br>Tommie Lee Seymore | **Inmate Number:**<br>213863 | Filed: 12-06-2007 At 09:13 AM<br>HC SEYMORE V WARREN (SS) |

| **Place of Incarceration:** Thumb Correctional Facility, 3225 John Conley Dr., Lapeer, Michigan 48446 |
|---|

| **Name of Petitioner (Include the name under which you were incarcerated)** **Name of** **Respondent** **(authorized person having custody over you)** |  |  |
|---|---|---|
| Tommie Lee Seymore | **VS.** | Millicent Warren, Warden. |

| The Attorney General of the State of: |
|---|

## PETITION

1. Name and location of court which entered the judgment of conviction under attack:

   <u>3rd Judicial Circuit Court, 1441 St. Antoine, Det, Mich 48226</u>

2. Date of judgment of conviction:
   December 10, 1990

3. Length of Sentence:   <u>Natural Life, plus two years.</u>

4. Nature of offense involved (all counts):
   First Degree Murder, MCL 750.316
   Felony Firearm, 750.227

5. What was your plea? (check one)

   (a)   Not guilty          ☒

   (b)   Guilty              ☐

   (c)   Nolo contendere     ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details: _____

6. If you pleaded not guilty, what kind of trial did you have? (check one)

     (a)    Jury         ☒

     (b)    Judge only  ☐

7.    Did you testify at the trial?

     Yes ☐              No ☒

8.    Did you appeal from the judgment of conviction?

     Yes ☒              No ☐

9.    If you did appeal, answer the following:

     (a)    Name of court:  **Michigan Court of Appeals**

     (b)    Result:  **Affirmed Per Curiam, Unpublished Opinion**

     (c)    Date of result and citation, if known:  **August 4, 1994**

     (d)    Grounds raised:  **See Appendix A**

     (e)    If you sought further review of the decision on appeal by a higher state court, please answer the following:

          (1)    Name of court:  **Michigan Supreme Court**

          (2)    Result:  **Leave Denied**

          (3)    Date of result and citation, if known:  **April 28, 1995**

          (4)    Grounds raised:  **See Appendix A**

     (f)    If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

          (1)    Name of court:  U.S. Supreme Court

          (2)    Result:  Certiorari Denied

          (3)    Date of result and citation, if known:  October 1, 2007, No.06-11012

          (4)    Grounds raised:  **See Appendix C**

10.    Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

     Yes ☒              No ☐

11.     If your answer to 10 was "yes", give the following information:

     (a)     (1)     Name of court: __**3rd Judicial Circuit Court**__

               (2)     Nature of proceeding: __**Michigan Court Rule (MCR) 6.500**__

               (3)     Grounds raised: __**See Appendix B**__

               (4)     Did you receive an evidentiary hearing on your petition, application, or motion?
                    Yes ☒                No ☐

     (b)     As to any second petition, application, or motion give the same information:

               (1)     Name of court: _____

               (2)     Nature of proceeding: _____

               (3)     Grounds raised: _____

               (4)     Did you receive an evidentiary hearing on your petition, application, or motion?
                    Yes ☐                No ☐

     (c)     Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

               (1)    First petition, etc.     Yes ☒       No ☐
               (2)    Second petition, etc.     Yes ☐       No ☐

     (d)     If you did *not* appeal from the adverse action on any petition, application, or motion explain briefly why you did not: _____

12.    State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds, and *facts* supporting same.

**CAUTION**: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if yo have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any of these grounds:

(a)    Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b)    Conviction obtained by the use of coerced confession.

(c)    Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d)    Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e)    Conviction obtained by a violation of the privilege against self-incrimination.

(f)    Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g)    Conviction obtained by a violation of the protection against double jeopardy.

(h)    Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i)    Denial of effective assistance of counsel.

(j)    Denial of right of appeal.

(A)    Ground one: (See Brief in Support Issue I)

See Appendix D

Supporting FACTS (tell your story *briefly* without citing cases or law:

(See Brief in Support Issue I)

See Appendix D


(B)    Ground two: (See Brief in Support Issue II)

See Appendix D

Supporting FACTS (tell your story *briefly* without citing cases or law:

(See Brief in Support Issue II)

See Appendix D


(C)    Ground three: (See Brief in Support Issue III)

See Appendix D

Supporting FACTS (tell your story *briefly* without citing cases or law:

(See Brief in Support Issue III)

See Appendix D


(D)    Ground four: & Five (See Brief in Support Issue IV & V)

See Appendix D

Supporting FACTS (tell your story *briefly* without citing cases or law): _____
(See Brief in Support Issue IV & V)

See Appendix D

_____
_____
_____

(13)   If any of the grounds listed in 12 A, B, C, and D were not previously presented in any other court, state or federal, state briefly what grounds were not so presented, and give your reasons for not presenting them:

_____
_____
_____

(14)   Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes ☐          No ☒

15.   Give the name and address, if known, of each attorney who represented you in the following states of the judgment attacked herein:

1.   At preliminary hearing:   Raymond E. Willis (P22379), 15630 W. 7 Mile Rd. Detroit, Michigan 48235

2.   At arraignment and plea: _____

3.   At trial:
William R. Daniel (P12479), 28 W. Adams Ave Ste 900, Detroit, Michigan 48226

4.   At sentencing: William R. Daniel (P12479), 28 W. Adams Ave Ste 900, Detroit, Michigan 48226

5.   On appeal: Rose Mary Robinson (P19529), 4221 Avery St., Detroit, Michigan 48204

6.   In any post-conviction proceeding: William Hunter (P30911), Antonio D. Tuddles (P64158), 615 Griswold St. Ste 1509, Detroit, Michigan 48226

7.   On appeal from any adverse ruling in a post-conviction proceeding:   Pro-Per

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?

Yes ☐         No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ☐         No ☒

   1.   If yes, give name and location of court which imposed sentence to be served in the future:

_____

_____

   2.   Give date and length of the above sentence:

_____

_____

   3.   Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes ☐         No ☐

Wherefore, Movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

*11 - 30 - 07*
_____
Date

_____
Signature of Movant

APPENDIX A                                                      APPENDIX A

APPENDIX A

APPENDIX A                                                      APPENDIX A

The following are issues that were raised on Petitioner's direct appeal in the Court of Appeals and the Michigan Supreme Court:

I. Appellant was denied his right to a fair trial and impartial jury where the court failed to hold a proper inquiry on jury misconduct and failed to declare a mistrial.

II. Appellant Seymore's absence during a critical hearing denied him of his constitutional rights and warrant reversal of his convictions.

III. Defendant was denied his constitutional right to effective assistance of counsel or in the alternative was denied a fair trial through counsel's serious mistakes, therefore, defendant is entitled to a new trial because he was denied effective assistance of counsel.

IV. Appellant Seymore was denied a fair trial by the prosecutor's improper impeachment of his own rebuttal witness.

V. The Trial court denied appellant Tommie Lee Seymore a fair trial by allowing prejudicial evidence to be introduced.

VI. The conduct of the prosecutor denied appellant of a fair trial.

VII. The trial court's failure to properly instruct the jury denied appellant Seymore of his right to a fair trial as guaranteed by both the federal and state constitutions.

APPENDIX B                                                            APPENDIX B

APPENDIX B

APPENDIX B                                                            APPENDIX B

The following issue were raised by Petitioner in a Motion for Relief From Judgment (MCR 6.500), on collateral review in the 3rd Judicial Circuit Court:

Issued submitted by attorney William Hunter on January 23, 1996:

I. The defendants conviction should be reversed and a new trial granted under both statute and constitution where at time of jury tampering inquiry by the court defendant was not present.

II. The trial court erred reversibly by denying defense motion for mistrial where under both statute and constitution the defendant is endowed with the right to be present at time of jury tampering inquiry by the court.

III. The defendant's convictions of first degree murder and felony firearm must be reversed where the numerous instances of prosecutor misconduct during the course of trial had the cumulative effect of denying defendant of a fair trial.

IV. The defendant's convictions of first degree murder and felony firearm must be reversed and a new trial required where the admissibility of other bad acts or crimes as substantive evidence denied the defendant a fair trial.

V. The defendant's conviction of first degree murder and felony firearm must be reversed and a new trial granted where in spite of absent objections there existed manifest and serious jury instruction errors by the trial court.

VI. The defendant's conviction of first degree murder and felony firearm and a new trial granted under the sixth amendment where at the Ginther hearing deficient conduct on the part of defense counsel was revealed sufficient for an ineffective assistance finding.

The following are the issues that were submitted by attorney Antonio Tuddles on May 3, 2004:

I. Defendant was deprived of his sixth amendment right to effective assistance of counsel on appeal, by counsel failing to raise numerous viable

meritorious claims, which were integral to defendant's case and may have
resulted in a reversal of defendant's case and may have resulted in reversal
of defendant's conviction and the granting of a new trial.

II.  Reversal is required where justice was denied defendant, when in his
absence, his co-defendant was allowed to be present and exercise his rights
of: confrontation, psychological influence, presence and right to present
a defense during the courts questioning of the jurors concerning jury
tampering, thereby depriving defendant of the same rights afforded to his
co-defendant in violation of defendant's constitutional rights according
to the 6th and 14th amendments of the United States Constitution.

III.  The trial court's abuse of discretion denied the defendant of his right
to due process and a fair trial by not granting a new trial when the standard
set forth in People v Levey, 206 Mich 129 (1919), required the granting of
a new trial.

IV.  Defendant's conviction must be reversed and a new trial granted where
the trial court abused it's discretion by failing to properly hold a "Remmer
Hearing" on jury tampering to allow the defendant an opportunity to establish
actual jury bias resulting from jury tampering, where on two separate
occasions five jury members were approached on behalf of the defendant,
depriving defendant of his constitutional right to a fair trial by impartial
jurors.

V.  Defendant's conviction must be reversed and a new trial granted where
the trial court allowed the jury to discuss the case among themselves without
the benefit of Counsel's arguments and guidance of the law, by failing to
give cautionary instruction CJI2d 2.12, throughout the entire trial, thereby
allowing the jurors to deliberate on the case as the trial went along, inside
and outside the jury room, among themselves, and discuss the case with family,
and friends, depriving the defendant of a fair trial by a panel of impartial,
indifferent jurors, in violation of the defendant's due process.

VI.  A new trial is required where the trial court abused it's discretion
by allowing evidence of defendant's drug dealing to be admitted by the

prosecution, that was used as substantive evidence, to prove the character of the defendant and that by propensity defendant committed the charge offense, which deprived defendant of a fair trial and his right to due process of the law.

VII.   Blatant prosecutorial misconduct deprived defendant of a fair trial in violation of the V and XIV amendments of the U.S. Constitution and the Michigan Constitution 1963, Art 1, Sec. 17.

VIII.   Even if no single assignment of error is sufficient for reversal, the totality of errors denied defendant of a fair trial.

The following issue were raised on collateral review in the Court of Appeals after Petitioner's Motion for Relief From Judgment was denied:

I.   When judge Townsend recused himself from appellant's case, losing jurisdiction, judge Townsend could not make any substantial decision on appellant's case after recusal, other than ministerial acts necessary to transfer the case to another judge, judge Townsend's opinion and order denying appellant's motion for relief from judgment and motion for reconsideration must be vacated.

II.   The trial court did not use MCR 6.508(D) to procedural bar the defendant, therefore defendant is not restricted by the procedural default of 6.508(D) on appeal, entitling defendant's appeal to proceed on the merits.

III.   Defendant was deprived of his sixth amendment right to effective assistance of counsel on appeal, by counsel failing to raise numerous viable meritorious claims, which were integral to defendant's case and may have resulted in a reversal of defendant's case and may have resulted in reversal of defendant's conviction and the granting of a new trial.

IV.   The trial court's abuse of discretion denied the defendant of his right to due process and a fair trial by not granting a new trial when the standard set forth in People v Levey, 206 Mich 129 (1919), required the granting of a new trial.

V.   Defendant's conviction must be reversed and a new trial granted where the trial court abused it's discretion by failing to properly hold a "Remmer Hearing" on jury tampering to allow the defendant an opportunity to establish actual jury bias resulting from jury tampering, where on two separate occasions five jury members were approached on behalf of the defendant, depriving defendant of his constitutional right to a fair trial by impartial jurors.

VI.   Defendant's conviction must be reversed and a new trial granted where the trial court allowed the jury to discuss the case among themselves without the benefit of Counsel's arguments and guidance of the law, by failing to

give cautionary instruction CJI2d 2.12, throughout the entire trial, thereby allowing the jurors to deliberate on the case as the trial went along, inside and outside the jury room, among themselves, and discuss the case with family, and friends, depriving the defendant of a fair trial by a panel of impartial, indifferent jurors, in violation of the defendant's due process.

VII.  Even if no single assignment of error is sufficient for reversal, the totality of errors denied defendant of a fair trial.

The following issue were raised on collateral review in the Michigan Supreme Court after Petitioner's Motion for Relief From Judgment was denied:

I.  When judge Townsend recused himself from appellant's case, losing jurisdiction, judge Townsend could not make any substantial decision on appellant's case after recusal, other than ministerial acts necessary to transfer the case to another judge, judge Townsend's opinion and order denying appellant's motion for relief from judgment and motion for reconsideration must be vacated.

II.  Defendant was deprived of his sixth amendment right to effective assistance of counsel on appeal, by counsel failing to raise numerous viable meritorious claims, which were integral to defendant's case and may have resulted in a reversal of defendant's case and may have resulted in reversal of defendant's conviction and the granting of a new trial.

III.  The trial court's abuse of discretion denied the defendant of his right to due process and a fair trial by not granting a new trial when the standard set forth in People v Levey, 206 Mich 129 (1919), required the granting of a new trial.

IV.  Defendant's conviction must be reversed and a new trial granted where the trial court abused it's discretion by failing to properly hold a "Remmer Hearing" on jury tampering to allow the defendant an opportunity to establish actual jury bias resulting from jury tampering, where on two separate occasions five jury members were approached on behalf of the defendant, depriving defendant of his constitutional right to a fair trial by impartial jurors.

V.  Defendant's conviction must be reversed and a new trial granted where the trial court allowed the jury to discuss the case among themselves without the benefit of Counsel's arguments and guidance of the law, by failing to give cautionary instruction CJI2d 2.12, throughout the entire trial, thereby allowing the jurors to deliberate on the case as the trial went along, inside and outside the jury room, among themselves, and discuss the case with family, and friends, depriving the defendant of a fair trial by a panel of impartial,

indifferent jurors, in violation of the defendant's due process.

New Issue

I. The court of appeals violated appellant's due process rights under the misapprehension that MCR 6.508(D) can be used to procedurally bar a jurisdictional defect that happened outside the scope of MCR 6.500, erroneously denying appellant's first issue on leave to appeal where appellant alleged a jurisdiction defect occurred when his trial judge, who was disqualified for bias from appellant's case, made a substantial ruling denying appellant's MCR 6.500 motion after disqualification.

APPENDIX C

APPENDIX C

APPENDIX C

APPENDIX C

APPENDIX C

The Petitioner filed a Writ of Certiorari in the United States Supreme Court, Tommie Lee Seymore v Michigan, No. 06-11012, and presented the following issue:

I. Whether judge Townsend's post-recusal adjudication denying Petitioner's post-recusal motion for relief from judgment violated 28 U.S.C. Sec. 455 and conflicts with decisions of this court and the United States Court of Appeals.

The Writ of Certiorari was filed on April 23, 2007 and Denied on October 1, 2007.

This issue was presented to the trial court in a motion for reconsideration and it was denied on 9-27-04. Petitioner raised this issue in the Michigan Court of appeal and it was denied on 3-16-06 and denied in the Michigan Supreme Court on October 31, 2006. Petitioner filed a motion for reconsideration in the Michigan Supreme Court and it was denied January 20, 2007.

APPENDIX D                                                          APPENDIX D

APPENDIX D

APPENDIX D                                                          APPENDIX D

ISSUE I

WHEN  JUDGE  TOWNSEND  RECUSED  HIMSELF  FROM  APPELLANT'S  CASE,  LOSING
JURISDICTION,  JUDGE  TOWNSEND  COULD  NOT  MAKE  ANY  SUBSTANTIAL  DECISIONS  ON
APPELLANT'S  CASE  AFTER  RECUSAL,  OTHER  THAN  MINISTERIAL  ACTS  NECESSARY  TO
TRANSFER THE CASE TO ANOTHER JUDGE, JUDGE TOWNSEND'S OPINION AND ORDER DENYING
APPELLANT'S  MOTION  FOR  RELIEF  FROM  JUDGMENT  AND  MOTION  FOR  RECONSIDERATION
MUST BE VACATED.

28 U.S.C. Sec.455, which governs all judges in the united States, both
state  and  federal,  was  designed  to  promote  public  confidence  in  the
impartiality of the judicial process.  The statute places a self—enforcing
obligation  upon  judges  to  stand  recused  where  legal  grounds  exist  for
disqualification.  Michigan codified Sec. 455 in its Rules of Court, under
chapter 2.300.

In this case, the judge who originally presided over the trial and
sentencing proceedings, invalidly resumed control over the Petitioner's case
himself.  After recusal, the judge entered a final order of denial with
respect to the judgment under attack.  The judge violated Sec. 455 and MCR
2.300 when he did so.

In 1996, after completion of direct review, Petitioner filed a Motion
for Relief From Judgment, pursuant to Chapter 6.500 et. seq., of the Michigan
rules  of  Court  (MCR).  Along  with  this  post  appellate  relief  motion,
Petitioner  filed  a  separate  motion  to  disqualify  the  original  judge  who
presided over his case, Judge Leonard Townsend.  In response to Petitioner's
motion to disqualify, Judge Townsend acknowledged bias, and recused himself
from the case.  The Petitioner's case was then transferred to another judge,
Judge Kym Worthy.  This transfer was noted in subsequent evidentiary hearing
held by Judge Worthy regarding Petitioner's claims of ineffective assistance
of counsel contained in his post judgment motion:

The Court (Judge Worthy): I'm sorry Mr. Hunter.

Mr. Hunter (Attorney for Petitioner): Good morning.  For the
record, my name is William Hunter, P-30911, appearing on behalf

> of Tommie Seymore. Your Honor, this is — originally we had
> filed a motion to disqualify along with post judgment relief
> motion which has six issues. The motion to disqualify has
> been remedied mute by the fact of the transfer.
> (See Exhibit   , Hearing Transcripts, 4-12-96, pg 8)

On September 27, 1996, Defense Attorney William Hunter motioned the

court to hold the defendant's motion in abeyance in order to draft other

issues.

Petitioner latter resubmitted his motion under 6.500 et. seq. in 2004.

The motion fell before Judge David Allen, the successor who replaced Judge

Worthy, who had recently stepped down from the bench to become Wayne County

Prosecutor. Somehow, however, the motion returned before Judge Townsend,

who subsequently disposed of it on July 14, 2004.

Taken aback by Judge Townsend's post-recusal ruling, Petitioner filed

a motion for reconsideration, arguing, inter alia, that Judge Townsend

committed clear and palpable error in disposing of his post-appellate motion

after having had previously recused himself from the case. Remarkably, Judge

Townsend also ruled upon the reconsideration ignoring Petitioner's issue

against him, and denied the reconsideration.

Following this, Petitioner sought Mandamus with Michigan Court of Appeals

to correct the jurisdictional defect of Judge Townsend's post-recusal entrance

of an order disposing of his post-appellate motion. Under federal and state

jurisprudence, mandamus was the proper remedy to vacate post-recusal orders

by judges previously recused. Tommie Lee Syemore v Leonard Townsend, 3rd

Circuit Judicial Court Judge, Docket No. 259843 (2004). However, the Michigan

Court of Appeals rejected Petitioner's Mandamus action, stating that:

> The Complaint for a writ of mandamus, which is in actuality
> a complaint for writ of superintending control, per MCR
> 3.302(C), is DISMISSED for lack of jurisdiction seeing as
> plaintiff may appeal the July 14, 2004, order denying his motion
> for relief from judgment under MCR 6.500 et seq. MCR
> 3.302(D)(2), 7.203(C)(1), and 7.206(B). If plaintiff wants

to challenge the July 2004 order, he must file a delayed
application for leave to appeal under MCR 7.205. See MCR
7.203(B)(1).

Adhering to the court's instructions, the Petitioner timely filed an
application for delayed appeal, raising the challenge to Judge Townsend's
post-recusal order. However, the court, under the pretenses that his
jurisdictional challenge was directed at some issue underlying his conviction
and sentence, and was, thus, subject to the rigors of MCR 6.508(D)(i.e.,
that he must overcome procedural default by satisfying good cause and actual
prejudice), denied the application on that ground without addressing the
actual challenge to Judge Townsend's invalid post-recusal order. See <u>People
of the State of Michigan</u> v <u>Tommie Lee Seymore</u>, Docket Number 262724, 3-16-
06.)

Next, the Petitioner presented his challenge of Judge Townsend's post
recusal order denying his motion for relief from judgment to the Michigan
Supreme Court for discretionary review. The Michigan supreme Court denied
the application on the same erroneous grounds as the Michigan Court of Appeals
did on October 31, 2006, finding that the petitioner, ". . . failed to meet
the burden of establishing entitlement to relief under MCR 6.508(D)."
Petitioner filed for reconsideration in the Michigan Supreme Court that was
denied January 29, 2007.

On April 23, 2007, Petitioner filed a Writ of Certiorari in the United
States Supreme Court. That court Denied the petition for Certiorari on
October 1, 2007.

Normally, nothing prohibits a judge from reconsidering a recusal
decision, considering that any interlocutory ruling can be reconsidered.
But once the case has already been transferred prior to entry of a final
judgment, the judge is barred from reconsideration of a prior decision.

This rule holds true even if the recusal order was improvidently entered.

In this case, Judge Townsand should have stood recused on the matter, and not resume control over the case to decide the merits of Petitioner's post-appellate motion. Although, MCR 6.504 required that Petitioner's motion be presented to Townsend, the judge who was assigned the case at the time of the conviction, that rule also contains another provision requiring reassignment of the motion to another judge, if the appropriate judge is not available. Disqualification for bias rendered Townsend unavailable to decide the motion.

The proper procedure for Townsend to follow in such a case of disqualification was MCR 8.111(A)(C), which governs reassignments of cases.

Townsend further compounded his error by also ruling upon Petitioner's reconsideration motion. Where Judge Townsend failed to address the first issue of Petitioner's reconsideration motion, claiming that judge Townsend recused himself prior to ruling on Petitioner's post-appellate motion and violated 28 U.S.C. Sec. 455. and MCR 2.003.

His resumption of control over Petitioner's case constitutes either defiance or reconsideration of his prior disqualification. Yet, Townsend stated nothing on record to justify his actions in hearing the motion. Nevertheless, both  judicial acts should be considered void for want of jurisdiction.

Allowing Townsend's post-recusal decisions over Petitioner's case to stand poses a risk of injustice to the Petitioner. Townsend has already determined himself to be biased towards Petitioner's criminal case, and found himself worthy of disqualification. And, Townsend made this determination nearly ten years after Petitioner's conviction. So, any actions soon after Townsend's disqualification, and after the case has been transferred, can

only been deemed based on bias. Petitioner has a constitutional entitlement to an unbiased adjudication.

There is also a risk that refusal to vacate Townsend's post-recusal orders in this case would create injustice in other cases. Without a decision in the affirmative of Petitioner's argument, there is nothing to stand in the way of other judges to act in defiance of recusal orders and arbitrarily resume control over a case towards which they have been deemed biased. Nor is there any uniform rule in place in Michigan to ensure that further parties receive fair and impartial treatment in a proceeding after the original judge has been recused.

Townsend's violations are symptomatic of a judiciary that is losing the public's confidence in it's ability to be fair and impartial. Refusal to vacate in this case runs the risk that all public confidence in the Michigan judiciary will be lost.

This Court should vacate Judge Townsend's post-recusal adjudication where Michigan higher Court's failure to enforce 28 U.S.C. Sec. 455 upon circuit court judge Leonard Townsend's post-recusal adjudication denying Petitioner's post-appellate motion for relief from judgment, violating Sec. 455, regarding recusal, according to this Court; the United States Court of Appeals and the United States Supreme Court.

ISSUE II

PETITIONER'S CONVICTION MUST BE REVERSED AND A NEW TRIAL GRANTED WHERE THE TRIAL COURT ABUSED IT'S DISCRETION BY FAILING TO PROPERLY HOLD A "REMMER HEARING" ON JURY TAMPERING TO ALLOW THE DEFENDANT AN OPPORTUNITY TO ESTABLISH ACTUAL BIAS RESULTING FROM JURY TAMPERING, WHERE ON TWO SEPARATE OCCASIONS FIVE JURY MEMBERS WERE APPROACHED ON BEHALF OF THE DEFENDANT, DEPRIVING DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY IMPARTIAL JURORS.

On December 10, 1990, prior to final arguments and jury instructions, two jurors – Juror No. 13 and 10 – approached the bench. The two jurors revealed to the Judge that they were approached by someone that was sitting with the Defendant's family, on two separate occasions. Juror No. 13, Rowena Burns, was approached in the Court House vestibule while waiting for a ride home, it was stated to her, "I just want you to know both of my boys are innocent." Juror No. 10, Denise Hardaway, was approached in the parking lot. It was also revealed by Juror No. 10, that three other jury members were with her in the parking lot; Juror No. 5, Zena Simmons, Juror No. 6, Kaye Clay and Juror NO. 2, Trya Williams, it was stated to them, "Dont' send my boys to jail they're innocent."

Upon learning that three other jurors were exposed to what was said to Juror No. 10, the Court, through counsels urging, called the three other jurors out of the jury room (by having Juror No. 10, retrieve them out of the jury room). It was revealed that they heard what the un-identified man said to Juror No. 10. The Trial Court then asked Juror no. 6, 5, and 2, a very vague question, "Did that make a difference." (TT IV, December 10, 1990, page 6). They responded, no. When the Court asked Juror No. 13, the same question she stated, "Well, no, but I don't like being approached like that." Juror No. 10 was silent. All of this was done without the Petitioner being present. None of the jurors were asked the proper question, "Would being approached like that effect their decision making process, with reaching a fair and just verdict rendered on the facts that were presented to them in the court room."

On February 8, 1991, attorney for the Petitioner, William Daniel (P 12479), brough a Motion for New trial before the Court, arguing that nothing was done to protect the Defendant's right to a fair trial by impartial jurors by the Court.  Also, that there was some intimidation, because one of the jurors that was approached brought a male escort to court with her for the first time during the entire trial.

The Defendant contends that, once it was revealed that there was jury tampering, it was the duty of the Trial Court to hold a "Remmer Hearing," pursuant to Remmer v United States, 347 U.S. 227; 74 S.Ct. 450; 98 L.Ed. 645 (1956), to investigate the matter of the jury tampering to ensure that the presiding jury was going to be impartial to the Petitioner after being approached and threatened on his behalf.  The Petitioner also contends that the burden of proof rest upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality.  Therefore, Petitioner must be given the opportunity to prove juror bias.

The Trial Court failure to hold a "Remmer Hearing" on jury tampering to ensure their impartiality and give Petitioner an opportunity to establish jury bias, prevented Petitioner from demonstrating with specificity that the jury tampering did in fact impair the ability of the jury to decide the case solely on the evidence properly presented to them through the mechanism of the trial.

The trial Court in its' ruling failed to address the fact that the Petitioner must be given an opportunity to prove actual bias.  Instead the Court found that it's conference at the bench (absent the Petitioner) with the five jurors was sufficient – going against clearly established Supreme Court precedent.

It is not known if the five jurors notified their counterparts, this

question was never asked and when the court was asked to question the other jurors to see if they heard anything about the tampering, the court took it upon it's self to say that the five jurors said that they never said anything to the other jurors – even though they never said they did not discuss what transpired with the other jurors – and to say something to them would just be spreading it around. (TT, 12–10–90, pg. 3–6). All five jurors answered a few questions at the bench outside the presence of the other jurors and the Petitioner, but never questioned them individually. Three jurors said that it would not affect them, 6, 5, and 2, juror No. 13 said that she did not appreciate being approached like that, that it did not make a difference to her and juror No. 10 remained silent. The court then ordered the jurors back to the jury room without instructions not to discuss being threatened and being questioned by the court with the other jurors. The court did not summon the entire jury, like counsel requested, and ask a series of questions designed to elicit whether any juror's impartiality had been compromised and could they remain impartial and could they render a verdict based upon the evidence and the court's instruction.

The trial court further held that Remmer does not dictate that a full hearing be held in all suspected tampering cases. That the side bar was sufficient. However, in a criminal case involving jury tampering, Remmer does dictate that a hearing must be held during which the defendant is entitled to be heard and have the opportunity to prove actual bias, this was not done, the Petitioner was not present in the courtroom. The Petitioner must be given an opportunity to prove actual jury bias and when a defendant alleges such a violation as jury tampering, the defendant must be given an opportunity to prove actual juror bias, because the burden of showing actual bias is upon the Petitioner.

Petitioner's rights were trampled upon further when at the side bar counsel requested for the rest of the jury to be called out, but was denied by the court. (T.T., 12-10-90, pg. 3-6). Depriving the Petitioner of the opportunity to meet the burden of proving actual juror bias, and thereby denied a fair trial.

The Petitioner did not receive the guaranteed opportunity to prove actual jury bias, nor was Petitioner given the opportunity to prove that he had nothing to do with the jury tampering.

The Damage was done and to what extent needed to be known to protect the Petitioner's right to a fair trial by an impartial jury. It was required that the Trial Court hold a Remmer Hearing, to give the Petitioner the opportunity to prove that at least one of the jurors were bias. Had Petitioner been afforded a Remmer Hearing, he is more than confident that it could have been proven that at least one or more of the jurors were bias.

### THE SIDE BAR AT THE BENCH WAS NOT AN ADEQUATE HEARING

The trial court in it's ruling denying the Petitioner's Motion for Relief From Judgment stating that the side bar conference was adequate. Petitioner assert that the side bar that was held between the Trial Court, the five jurors, defense counsel and the prosecution, could not be considered a Remmer Hearing. To do so would be contrary to clearly established Supreme Court precedent.

The nature of the Remmer Hearing, as in all hearings, require testimony, those giving testimony must be sworn in under oath as witnesses, not jurors. In the present case, the jurors were not under oath as witnesses. Secondly, Petitioner was not allowed to question the jurors individually, defense counsel was not allowed to probe and question effectively the five jurors at the bench about the extent of their interaction with the unidentified

man, nor was he allowed to question the remaining eight jurors.(per the judges orders) Third, the Petitioner was not present.  Fourth, the remaining eight jurors were not questioned at all.  The extent of the jury tampering could not be exposed in an improper side bar at the judge's bench.  The side bar could not be the proper remedy for jury tampering, when the proper remedy has been defined by the United States Supreme Court.

Also, it would be ridiculous to say the other jurors were not informed as to why the five jurors were being called out, when the jury was never instructed not to discuss the case, especially when Juror No. 10 had to go back into the jury room to bring out Jurors No. 6, 5, and 2.  A proper Remmer Hearing was necessary to determine the extent of the jury tampering. Therefore, counsel moved for a mistrial.

The Petitioner has a Due Process right to have a factual determination made regarding the effect of the jury tampering on the jury.  Without the hearing, Petitioner was not given the chance to prove juror bias.

This violation of Petitioner's rights alone is serious enough to constitute a miscarriage of justice and a New Trial is required.

## ISSUE III

PETITIONER'S CONVICTION MUST BE REVERSED AND A NEW TRIAL GRANTED WHERE THE TRIAL COURT ALLOWED THE JURY TO DISCUSS THE CASE AMONG THEMSELVES WITHOUT THE BENEFIT OF COUNSEL'S ARGUMENTS AND GUIDANCE OF THE LAW, BY FAILING TO GIVE CAUTIONARY INSTRUCTION CJId 2.12, THROUGHOUT THE ENTIRE TRIAL, THEREBY ALLOWING THE JURORS TO DELIBERATE ON THE CASE AS THE TRIAL WENT ALONG, INSIDE AND OUTSIDE THE JURY ROOM, AMONG THEMSELVES, AND DISCUSS THE CASE WITH FAMILY, AND FRIENDS, DEPRIVING THE PETITIONER OF FAIR TRIAL BY A PANEL OF IMPARTIAL, INDIFFERENT JURORS, IN VIOLATION OF THE PETITIONER'S DUE PROCESS.

The Sixth Amendment guarantees every defendant in a criminal prosecution the right to trial by an "impartial jury." Any discussion among jurors of a case prior to formal deliberations certainly endangers that jury's impartiality. Such conversations may lead jurors to form an opinion as to the defendant's guilt or innocence before they have heard all of the evidence, the arguments of counsel, and the court's instructions. The right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. The failure to accord an accuse a fair hearing violates even the minimal standards of due process. Without reading CJI2d 2.12, the jurors were allowed to discuss and deliberate on the case from it's inception until it's conclusion, violating Petitioner's Due Process.

In Michigan the Mandatory Court Jury Instruction (CJI) for the jury not to discuss the case until all the proofs are in is CJI2d 2.12. Petitioner contends that the trial court's failure to give CJI2d 2.12 during Petitioner's entire trial - allowed the jury to discuss and deliberate the case as the case went along without the guidance of the court's instructions on the law and counsel's arguments, inside and outside the courtroom with family and friends and among themselves, thus creating a structural error.

Further, the trial court confirmed in it's denial of Petitioner's Motion For Relief From Judgment, not giving CJI2d 2.12 at Petitioner's trial, calling it "regrettable," violating the Petitioner's right to an impartial jury and Due Process of the Law, but failed to take the appropriate action and grant the Petitioner a new trial.(See Motion for Relief From Judgment Opinion and

Order, 7/14/04, page 6)

The Court after conceding to the stupendous error of not giving CJI2d 2.12 attempted to side step the issue at hand and chose to say that the Petitioner relied heavily upon the fact that the juror brought an "escort to court after being approached in a happenstance manner is concrete evidence that this juror decided the case with family or friends." The Petitioner's reliance is not upon the jurors escort, but upon the fact that the mandatory jury instruction was not given, which the trial court admitted not giving. The Petitioner's contention was and still is that he was denied his right to a fair trial by impartial jurors who were not instructed by the court to not discuss the case, depriving the Petitioner his Constitutional Rights.

The aforementioned jury instruction was especially required due to the compounded insult to the integrity of the trial with the jury tampering circumstances that occurred showing prejudice to the Petitioner: Two jury members approached the Judge's bench at the same time concerning two separate incidents where someone approached them stating, "Don's find my boys guilty."(TT IV, 12/10/90, pg 3). One incident occurred in the parking lot of the Courthouse and the second incident was in the Courthouse vestibule.(TT IV, 12/12/90, pg 3).

It is not mere speculation to say, that before the juror members approached the bench they discussed whether or not to approach the bench and bring this incident to the Trial Court's attention with the other jurors. This is evident due to the fact that four jurors were present during one incident in the parking lot, Jurors No. 2, 5, 6, and 10, but only one of the four — their representative, Juror No. 10 — approached the bench with the other juror that had been approached separately, Juror No. 13.(TT IV, 12/10/90, pg 3).

During the side bar at the bench, the jurors were never asked did they discuss what happened to them with their family or the rest of the jury members. The five members should have been instructed not to discuss what transpired at the bench and with the unidentified person with the rest of the jury or anyone.

The judge made the following statement: "The Court: (interposing) all we're doing is spreading it around. They said they didn't discuss it with anyone. They did what they were told to do and it doesn't make any difference to them." (TT IV, 12/10/90, pg 4).

The above statement is without support and it is the only statement by the trial court concerning discussing what happened to the jurors with anyone, including the other jury members that were not called out of the jury room. Nowhere in the trial transcripts did the jury members say that they did not discuss the case with anyone, nor did the trial court instruct the jury members not to discuss what transpired with the rest of the jury.

When all of the above factors are added together, overwhelming prejudice is visited upon the Petitioner. The no-discuss instruction was necessary to ensure Petitioner's Due Process Rights to a fair trial and impartial jury were not violated. By Due Process of the law is meant "a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial."

After the incident happened with the jurors, one of the jurors brought a male escort to Court the following day. This male escort was permitted to use the jury exit along with the jurors. (Affidavits of: Kimberly Seymore, Kathy Blackshear. Also Motion for New trial Transcripts, 2/8/91, pages 17–18). In order for a civilian to use this elevator, they must have permission from the court, therefore something was told to the court to allow this person

to travel along with the jury, this at least indicated that one of the jurors did discuss the jury tampering with family and friends, and possibly further with the judge, in violation of CJI2d 2.12, of which was never given.

It was not a happenstance meeting between the juror and the person that threatened her as the trial court stated, this person sought her out and four other jury members that we know about, on two separate occasions. There was nothing happenstance about his approach and threats. To protect the Petitioners right to a fair trial by impartial jurors, it was the courts duty to instruct the jury not to discus the case, or the jury tampering.

Prejudice should be presumed in the Petitioner's case, considering the court never told the jury that they could not discuss the case as the trial went along, compounded with five of the twelve jurors, were never instructed not to discuss the conversation that they had with the court concerning being approached on behalf of the Petitioner, or the conversation they had with the unidentified man, no instruction was given at the beginning of trial informing the entire jury that they could not deliberate or discuss the case as the case went along with each other, family or friends.

Therefore, Petitioner contends that without CJI2d 2.12, the jurors were allowed to deliberate on the case as the case went along and discuss the present case with anyone from the moment they became official jurors of the case. This "structural error" compounded once jury tampering transpired. Without the "no-discuss" instruction, they were allowed to deliberate on the case as the case went along and discuss the case with family and friends through the trial, plus five were allowed to discuss being threatened on behalf of the defendant with the remaining eight jurors and it cannot be said that they did not deliberate on the case as the case went along or discuss the case and what transpired during the case with each other or

friends and family, because they were never told not to. Petitioner's due process was violate and he was deprived of a fair trial by impartial jurors. Petitioner request that his conviction be reversed and a New trial granted. For this irregularity was so offensive to the maintenance of sound judicial process, the Petitioner's conviction should not be allowed to stand.

PETITIONER'S ABSENCE DURING A CRITICAL HEARING DENIED HIM OF HIS CONSTITUTIONAL RIGHTS AND WARRANT REVERSAL OF HIS CONVECTION.

In the instant case, Petitioner, Tommie Lee Seymore, and his Co-Defendant, Roderick Bass, were jointly tried for first degree murder. On December 10, 1990, a case of jury tampering was brought to the judges attention. Present as the bench was juror No. 13, 10, 6, 5, and 2, the Judge, the Prosecutor and Counsel for both Defendants. In the court room at the Defense table was Co-Defendant, Roderick Bass. Petitioner was not in the Court room during this brief questioning. After the questioning was over, Petitioner's attorney brought to the Court's attention that his client was not present during the questioning:

> (Petitioner's Attorney)Mr. Daniel: I'm making these statements
> outside the presence of the jury and my client.
> I think I'd better have my client.
>
> The Court: Sure, Sure.
>
> (Pause in proceedings)
>
> The Court: Okay. Mr. Daniel. Go ahead.
>
> Mr. Daniel: Yes Your Honor.
> Your Honor, I'd like to just review one thing that happened
> Thursday and I'm going to make a motion for a mistrial.
> (TT IV, 12/10/90, page 6).

The Petitioner was brought back into the courtroom and took a seat at the defense table, where his Co-Defendant was sitting during the entire questioning of the jurors.(See Affidavit of Roderick Bass). While this brief questioning is going on at the bench, Mr. Bass is sitting at the defense table and during this conversation at the bench the jurors stated that the person was sitting in the courtroom Thursday that approached them:

> Juror No. 13: I was approached down in the vestibule while
> waiting on my ride by someone that was sitting in the courtroom
> Thursday.
>
> He had on a brown-like leather jacket, and he said, "I just

want you to know both of my boys are innocent."

The Court: The person is out there now?

Juror No. 13: No, he is not out there now.

Juror No. 10: No.
(TT IV, 12/10,90, pages 3-6)

With Mr. Bass sitting at the defense table and the judge asking the jurors "is he in the courtroom now" and the Petitioner not being present, the jurors could have speculated adversely about Petitioner's absence and the guy that approached them. Petitioner's absence denied him of his right to confront and question the five jurors about the effect this stranger's misconduct had upon them, and how it would affect their determination of his guilt or innocence. He was denied the opportunity to see their demeanor and weigh their responses, and then act accordingly to insure a fair and impartial jury. He was denied the opportunity to consult with Counsel on this jury issue.

There is a reasonable possibility that the juror's drew negative inferences from the Petitioner's absence. The potential for negative inference is heightened where, as here, the five jurors notices Petitioner's absence, while his Co-defendant is present during this crucial point in trial, where the jurors revealed that they were threatened on behalf of the Petitioner. By Petitioner's absences the jurors could have speculated that he had something to do with them being threatened and not his Co-Defendant, thereby adversely speculating about Petitioner's absence and finding Petitioner guilty and Mr. Bass not guilty.

Therefore, Petitioner absence from the court room during the side bar questioning the jurors affected his substantial right to a fair trial and reversal is warranted.

THE CONDUCT OF THE PROSECUTOR DENIED THE PETITIONER OF A FAIR TRIAL.

A criminal defendant's due process right to a fair trial, may be breached by the intemperate comments and actions of overly zealous prosecutors. It is the Petitioner's contentions that these certain statements made by the prosecutor during closing arguments were designed to inflame the passions and prejudices of the jury, causing substantial prejudice to the Petitioner. Although these remarks were isolated to one portion of the trial, closing arguments, however, this fact does not ameliorate their prejudicial impact; the remarks were misleading, inflammatory and prejudiced Petitioner's right to a fair trial.

Notably, the prosecutor's reference to the Genovese trial in New York was inflammatory. Here, he argued that the reason why no one other than the family members of the decedent testified was like in the Genovese case. (Here a woman was raped in the streets and though there were witnesses, no one came forth to testify to what they had seen. It was speculated that the reason why the witnesses did not come forth to testify was because the Mafia was involved and that there would be serious repercussion for anyone who came forward.)

The efforts of the prosecutor were not isolated, nor were they accidentally injected. During closing arguments the prosecutor stated that Petitioner had a "Mafia like family." Defense counsel for Petitioner did object, but the trial court made no ruling.(TT IV, 12/10/90, page 114). The prosecutor rephrased the term to "Dope Seller." The Petitioner asserts that this statement was calculated to inflame the passions of the jury.

The word "Mafia" had no legal relevance in Petitioner's trial, therefore the prosecutor had to calculate the use of the word, considering he used the Genovese case and the statement "Mafia like family." The jury could

have drew inferences considering what happened in the <u>Genovese</u> case, that
the witnesses were scared away and threatened by the Petitioner's so called
"Mafia like family," that the witnesses against the Petitioner were scared
to testify and the only people that were not afraid were the decedent's
family.(It cannot be assumed that the jurors did not know about the <u>Genovese</u>
case, jurors are from a broad scope of the community and the knowledge they
posses is not limited).  Also, when the jurors were approached on behalf
of the Petitioner, an attempt was being made to intimidate the jurors into
finding the Petitioner not guilty.  A tactic that is associated with the
Mafia.

The prosecutor for no proper purpose injected into trial the spectre
of organized crime and the Mafia.  The defense objected, but there was no
action taken by the court.  There was no jury instruction given to disregard
the highly inflammatory remark, nor did the court admonish the prosecution.

The above statement by itself requires a reversal of Petitioner's
conviction.  The prosecutor clearly overstepped his bounds of being zealous
and the transgression of the prosecutor was egregious.

Further adding insult to injury and rubbing salt into the wound, the
prosecutor injected into trial the alleged drug dealing of the Petitioner,
calling the drug business terrorism, and alluding to the Petitioner as a
terrorist:

> "Ladies and gentlemen, this isn't like, you know, playing
> canasta, this drug business.  We're talking about <u>terrorism</u>.
> People have to enforce their turf and what may be the rules
> to you and I, somebody dealing dope doesn't apply here.  We
> don't deal with AK 47 carbines to try to make sure the business
> deals go like we want them to go down."(TT I, 12/4/90, pages
> 115-116)

Petitioner's counsel made a timely objection to the inflammatory remark,
but the trial court failed to make a ruling and failed to give the jury an

instruction on how this statement was or was not to be used as evidence. Considering the time of the present case, which was weeks before the Persian Gulf War, and the daily attention given by the media and politicians to terrorism, to fight against terrorism. The remark addressed to the jury was highly prejudicial to the Petitioner.

Topped with the continuous labeling of the Petitioner as a drug seller, an un-proven allegation, the prosecutor stated that the Petitioner had a Mafia like family, and that the drug business was terrorism. It is clear that the statements that were made by the prosecutor were inflammatory and extremely prejudicial and considering that no curative instruction was given by the Trial Court or admonishment to the prosecutor, they could have but one result – to deny Petitioner of a fair and impartial trial. Therefore, reversal is required.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

TOMMIE LEE SEYOMRE

        Petitioner,

v

MILLICENT WARREN, Warden,

        Respondent.

_____/

Case: 2:07-cv-15166
Judge: Steeh, George Caram
Referral MJ: Komives, Paul J
Filed: 12-06-2007 At 09:13 AM
HC SEYMORE V WARREN (SS)

Tommie Lee Seymore 213863
 Per Se
Thumb Correctional Facility
3225 John Conley Dr.
Lapeer, Michigan 48446

Attorney General
P.O. Box 30217
Lansing, Michigan 48913
_____/

BRIEF IN SUPPORT OF HABEAS CORPUS
28 U.S.C. Sec. 2254

## TABLE OF CONTENTS

                                                                    Pages

Index of Authorities. . . . . . . . . . . . .                         ii

Statement of Questions Presented. . . . . . . . .                     vi

Statement of Jurisdiction. . . . . . . . . .                         vii

Statement of Facts. . . . . . . . . . . . . .                          1

Arguments:

I.   WHEN JUDGE TWONSEND RECUSED HIMSELF FROM PETITIONER'S CASE, LOSING
JURISDICTION, JUDGE TOWNSEND COULD NOT MAKE ANY SUBSTANTIAL DECISIONS ON
PETITIONER'S CASE AFTER RECUSAL, OTHER THAN MINISTERIAL ACTS NECESSARY TO
TRANSFER THE CASE TO ANOTHER JUDGE, JUDGE TOWNSEND'S OPINION AND ORDER DENYING
PETITIONER'S MOTION FOR RELIEF FROM JUDGMENT AND MOTION FOR RECONSIDERATION
MUST BE VACATED. . . . . .                                            15

II.  PETITIONER'S CONVICTION MUST BE REVERSED AND A NEW TRIAL GRANTED WHERE
THE TRIAL COURT ABUSED IT'S DISCRETION BY FAILING TO PROPERLY HOLD A "REMMER
HEARING" ON JURY TAMPERING TO ALLOW THE PETITIONER AN OPPORTUNITY TO ESTABLISH
ACTUAL BIAS RESULTING FROM JURY TAMPERING, WHERE ON TWO SEPARATE OCCASIONS
FIVE JURY MEMBERS WERE APPROACHED ON BEHALF OF THE PETITIONER, DEPRIVING
PETITIONER OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY IMPARTIAL JURORS. 23

III. PETITIONER"S CONVICTION MUST BE REVERSED AND A NEW TRIAL GRANTED WHERE
THE TRIAL COURT ALLOWED THE JURY TO DISCUSS THE CASE AMONG THEMSELVES WITHOUT
THE BENEFIT OF COUNSEL'S ARGUMENTS AND GUIDANCE OF THE LAW, BY FAILING TO
GIVE CAUTIONARY INSTRUCTION CJI2d 2.12, THROUGHOUT THE ENTIRE TRIAL, THEREBY
ALLOWING THE JURORS TO DELIBERATE ON THE CASE AS THE TRIAL WENT ALONG, INSIDE
AND OUTSIDE THE JURY ROOM, AMONG THEMSELVES, AND DISCUSS THE CASE WITH FAMILY,
AND FRIENDS, DEPRIVING THE PETITIONER OF A FAIR TRIAL BY A PANEL OF IMPARTIAL,
INDIFFERENT JURORS, IN VIOLATION OF THE PETITIONER'S DUE PROCESS. . .    32

IV.  PETITIONER'S ABSENCE DURING A CRITICAL HEARING DENIED HIM OF HIS
CONSTITUTIONAL RIGHTS AND WARRANT REVERSAL OF HIS CONVICTION. . .        38

V.   THE CONDUCT OF THE PROSECUTOR DENIED THE PETITIONER OF A FAIR TRIAL.  43


Relief requested. . . . . . . . . . . . . . . . . . . . .                49

INDEX OF AUTHORITIES

Federal cases

Arnold v Eastern Air Lines, Inc., 712 F2d 899(4th Cir. 1983). . .    18

Berger v United States, 295 U.S. 78; 55 S.Ct. 629; 79 L.Ed 1314(1935).    43

Black v Coord, 419 F.Supp.2d 373(N.D.NY 2006). . .    38

Dennis v United States, 399 U.S. 162; 70 S.Ct 519; 94 L.Ed 734(1950). . .    28

Doddy v OXY USA, Inc., 101 F3d 448(5th Cir. 1996). . .    18

Dyer v Calderon, 113 F3d 927(9th Cir. 1997). . .    29

El Fenix de Puerto Rico v The M/Y Johanny, 36 Fed 136(1st Cir. 1994). .    18,19

Grutter v Bollinger, 16 F.Supp.2d 797(E.D. Mich 1998). . .    18

Hopt v Utah, 110 U.S. 574; 28 L.Ed 262; 4 S.Ct 202(1884). . .    38

Illinois v Allen, 397 U.S. 337; 90 S.Ct 1057(1970). . .    38

In re Murchinson, 349 U.S. 133; 75 S.Ct 623; 99 L.Ed 942(1954). . .    18

In re South Corp., 334 F3d 941(11th Cir. 2003). . .    18

Liberty Lobby, Inc., v Dow Jones & Co. Inc., 838 F2d 1287(CA. D.C. 1988)    18

Liljiberg v Health Services Acquisition Corporation, 486 U.S. 847; 108 S.Ct 2197; 100 L.Ed.2d 285(1988). . . . . . . .    15,18,20

Moody v Simmons, 858 F2d 137(3rd Cir. 1988). . .    19

Nevers v Killinger, 169 F3d 352(1999). . .    23,31

Pierce v United States, 86 F2d 949(6th Cir. 1936). . .    45,48

Remmer v United States, 347 U.S. 227; 74 S.Ct 450; 98 L.Ed 645(1956). .    23-31

Republic of Panama v America Tobacco Co. Inc., 217 F3d 343(5th Cir. 2000).    19

Rohrbach v At&T Nassau Metals Corp., 915 F.Supp 712(M.D. Pa. 1996). .    18,19

Smith v Phillips, 455 U.S. 209; 102 S.Ct 904; 71 L.Ed.2d 78(1982). .    23-31

Snyder v Massachusetts, 291 U.S. 97; 54 S.Ct 330; 78 L.Ed 674(1934). .    38

Turner v Louisiana, 379 U.S. 466; 85 S.Ct 546; 19 L.Ed.2d 424(1965). .    32

United States v Bess, 593 F2d 749(1974). . .    44,46

United States v Boroin, 758 F2d 222(1985). . .    48

United States v Carroll, 26 F3d 1380(6th Cir. 1994). . .            43,46

United States v Chiantese, 582 F2d 974(1978). . .                  26,32

United States v Davis, 177 F3d 552(1999). . .                      30,31

United States v Delaney, 732 F2d 639(8th Cir. 1984). . .              29

United States v Edwards, 696 F2d 1277(11th Cir. 1983). . .            32

United States v Hendrix, 549 F2d 1225(1977). . .                     29

United States v Hively, 291 F.Supp.2d 858(E.D. Ark. 2003). . .       18

United States v Jordan, 49 F3d 152(5th Cir. 1995). . .               19

United States v Lauerson, 348 F3d 329(2nd Cir. 2003). . .         18,19

United States v Leon, 534 F2d 667(CA 6 1978). . .                    43

United States v Love, 534 F2d 87 (1976). . .                      45,46

United States v Monaghan, 741 F2d 1434(1984). . .                    47

United States v Myers, 550 F2d 1036(5th Cir. 1977). . .              47

United States v O'Keefe, 128 F3d 885(5th Cir. 1997). . .             20

United States v Pennell, 737 F2d 521(1984). . .                   23-31

United States v Perry, 512 F2d 805(1975). . .                        46

United States v Radka, 904 F2d 357(6th Cir. 1990). . .               48

U.S. v Berger, 472 F3d 1094(9th Cir. 2007). . .                      38

U.S. v Corrado, 304 F3d 593(6th Cir. 2002). . .                   28,30

U.S. v Dutkel, 192 F3d 893(9th Cir. 1999). . .                       26

U.S. v Hall, 85 F3d 367(8th Cir. 1996). . .                          29

U.S. v Johnson, 968 F2d 768(8th Cir. 1992). . .                      44

U.S. v Rigsby, 45 F3d 120(6th Cir. 1998). . .                     26,27

U.S. v Rugiero, 20 F3d 1387(6th Cir.). . .                           26

U.S. v Solivan, 937 F2d 1146(6th Cir. 1991). . .                  44-48

U.S. v Walker, 1 F3d 423(6th Cir. 1993). . .                      26-28

U.S. v Watson, 479 F3d 612(8th Cir. 2007). . .                       38

U.S. v Zelinka, 862 F2d 92(6th Cir. 1988). . .                          26,27

Valdez v Gunter, 782 F.Supp 99(D. Colo. 1992). . .                         41

Viereck v United States, 310 U.S. 236; 63 S.Ct. 561; 87 L.Ed 734(1934).  44,47

Wade v United States, 124 U.S. App DC 356; 441 F2d 1046(1971). . .         39

Winebrenner v United States, 147 F2d 322(8th Cir.). . .                  32,33

State cases

Adair v State of Michigan, 474 Mich 1027(2006). . .                        21

People v Bahoda, 448 Mich 261; 531 NW2d 659(1995). . .                     44

People v Brocato, 17 Mich App 277; 169 NW2d 483 (1969). . .                43

People v Fountain, 43 Mich App 489; 204 NW2d 532(1972). . .                42

People v Ginther, 390 Mich 436(1973). . .                                  11

People v Hunter, 218 Mich 525; 188 NW 346(1922). . .                       45

People v Hunter, 370 Mich 262; 121 NW2d 442(1963). . .                   32,37

People v Levey, 206 Mich 129(1919). . .                                    11

People v Mallory, 421 Mich 229(1984). . .                                  38

People v Medcoff, 334 Mich 108; 73 NW2d 537(1955). . .                     42

People v Morgan, 400 Mich 527(1977). . .                                   39

People v Monroe, 85 mich App 110; 245 NW2d 130(1979). .                  35,37

People v Nickopolos, 40 Mich App 146; 198 NW2d 51(1972). . .             41,42

People v Thomas, 46 Mich App 312; 208 NW2d 51(1973). . .                   41

Constitution & Statutes

28 U.S.C. Sec. 455. . .                                                  15-22

U.S. Const. 6, 14. . .                                                     38

Mich Const. 1963, Art 1, Sec. 17, 20. . .                                  38

M.C.L.A. 768.3; M.S.A. 28.1026. . .                                        39

M.C.L.A. 768.18. . .                                                       42

State Rules

MCR 2.300. . .                                                    15

MCR 6.500. . .                                                 15,16

MCR 6.508(D). . .                                                 17

MCR 6.504. . .                                                   19

MCR 8.111(A)(C). . .                                             20

CJI2d 2.12. . .                                               32-37

<u>M</u>iscellaneous

R. Flamm, Judicial Disqualification, Sec. 2241. . .              20

## QUESTIONS PRESENTED

I.   WHETHER OR NOT WHEN JUDGE TWONSEND RECUSED HIMSELF FROM PETITIONER'S CASE, LOSING JURISDICTION, JUDGE TOWNSEND COULD NOT MAKE ANY SUBSTANTIAL DECISIONS ON PETITIONER'S CASE AFTER RECUSAL, OTHER THAN MINISTERIAL ACTS NECESSARY TO TRANSFER THE CASE TO ANOTHER JUDGE, JUDGE TOWNSEND'S OPINION AND ORDER DENYING PETITIONER'S MOTION FOR RELIEF FROM JUDGMENT AND MOTION FOR RECONSIDERATION MUST BE VACATED?

II.   WHETHER OR NOT PETITIONER'S CONVICTION MUST BE REVERSED AND A NEW TRIAL GRANTED WHERE THE TRIAL COURT ABUSED IT'S DISCRETION BY FAILING TO PROPERLY HOLD A "REMMER HEARING" ON JURY TAMPERING TO ALLOW THE PETITIONER AN OPPORTUNITY TO ESTABLISH ACTUAL BIAS RESULTING FROM JURY TAMPERING, WHERE ON TWO SEPARATE OCCASIONS FIVE JURY MEMBERS WERE APPROACHED ON BEHALF OF THE PETITIONER, DEPRIVING PETITIONER OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY IMPARTIAL JURORS?

III.   WHETHER OR NOT PETITIONER"S CONVICTION MUST BE REVERSED AND A NEW TRIAL GRANTED WHERE THE TRIAL COURT ALLOWED THE JURY TO DISCUSS THE CASE AMONG THEMSELVES WITHOUT THE BENEFIT OF COUNSEL'S ARGUMENTS AND GUIDANCE OF THE LAW, BY FAILING TO GIVE CAUTIONARY INSTRUCTION CJI2d 2.12, THROUGHOUT THE ENTIRE TRIAL, THEREBY ALLOWING THE JURORS TO DELIBERATE ON THE CASE AS THE TRIAL WENT ALONG, INSIDE AND OUTSIDE THE JURY ROOM, AMONG THEMSELVES, AND DISCUSS THE CASE WITH FAMILY, AND FRIENDS, DEPRIVING THE PETITIONER OF A FAIR TRIAL BY A PANEL OF IMPARTIAL, INDIFFERENT JURORS, IN VIOLATION OF THE PETITIONER'S DUE PROCESS?

IV.   WHETHER OR NOT PETITIONER'S ABSENCE DURING A CRITICAL HEARING DENIED HIM OF HIS CONSTITUTIONAL RIGHTS AND WARRANT REVERSAL OF HIS CONVICTION?

V.   WHETHER OR NOT THE CONDUCT OF THE PROSECUTOR DENIED THE PETITIONER OF A FAIR TRIAL?

## STATEMENT OF JURISDICTION

On 12-10-90 Petitioner, Tommie Lee Seymore, was found guilty of first degree murder and felony firearm in the Recorders Court of Detroit(Now 3rd Judicial Circuit Court), for Wayne County.  On 12-20-90, Petitioner was sentenced to life without parole for the murder conviction and a mandatory consecutive two year term on the gun charge.

Petitioner's appeal of right was affirmed by the Michigan Court of Appeals in an Unpublished Opinion, per curiam, 8-4-94, No. 137544.

Petitioner filed a Delayed Application for leave to Appeal in the Michigan Supreme Court and was denied on 4-28-95, SC: No. 100792.

On 1-23-96, Petitioner filed a Motion for Relief From Judgment(MCR 6.500), through counsel William Hunter to be heard on 2-9-96.  Petitioner was brought back to the jurisdiction of the Trial Court for the hearing. At the hearing counsel filed a Motion for disqualification of judge, alleging that Judge Leonard Townsend was bias against the Petitioner.  On April 12, 1996, Petitioner appeared before Judge Kym Worthy, Judge Townsend's Alternate, Judge Townsend recused himself from the case.  Petitioner's Motion for Relief from Judgment proceeded before Judge Worthy.  Petitioner had several hearings in Judge Worthy's courtroom, before Counsel for Petitioner filed for a stay from the court to prepare and raise addition issues to support Petitioner's Motion for Relief From Judgment.  Judge Worthy granted the motion and did not stipulate a dead line for Counsel to re-submit the motion.  Petitioner's Motion was pending until re-submission.

Through counsel Antonio Tuddles, Petitioner re-submitted his Motion for Relief From Judgment and it was filed with the Court May 3, 2004. Petitioner's Motion was properly filed before Judge Worthy's successor, Judge David Allen.(Judge Worthy stepped down from the bench to be come Wayne County

Prosecutor).  Petitioner's Motion was then transferred, unbeknownst to Petitioner, back to recused Judge Townsend.

On July 14, 2004, Judge Townsend denied Petitioner's Relief From Judgment Motion(MCR 6.500).  Petitioner's counsel filed a motion for reconsideration. Judge Townsend denied Petitioner's motion for reconsideration on 9-27-94, and ignored the issue of his prior recusal.

Petitioner sought Mandamus action with the Michigan Court of Appeals to vacate the post-recusal order.  That Court dismissed Petitioner's Mandamus on 2-10-05.

Petitioner timely filed a Delayed Application for Leave to Appeal in the Michigan Court of Appeals.  Petitioner's Application was denied on 3-16-06.

Petitioner timely filed an Application for Leave to Appeal in the Michigan Supreme Court.  Petitioner's Application was denied on 10-31-06. Petitioner filed a timely motion for reconsideration of said order.  It was denied on 1-29-07.

After exhausting state remedies, Petitioner filed a Writ of Certiorari in the United States Supreme Court on 4-23-07.  Certiorari was denied on 10-1-07.

Petitioner has exhausted all of his state remedies and now timely files his Habeas Corpus Petition, pursuant to 28 U.S.C.A. Sec. 2254.

STATEMENT OF FACTS

Petitioner, Tommie Lee Seymore, was arraigned on an open count of murder in the 36th District Court on July 31, 1990.  He was charged in the shooting death of Nathaniel Cunningham, aka Michael Jones, aka James Cunningham, aka Thomas Cunningham, aka Nay-Nay, aka Pops, aka Nat.

During the preliminary examination on August 10, 1990, Petitioner's case was consolidated with Co-defendant, Roderick Bass' case.(PT, pages 3-4).  Over the Defense's objection, the Magistrate added a second charge to the open murder count, Possession of a Firearm in the Commission of a Felony. PT, pages 4-5).  Both Defendants were bound over on the two counts for trial in the Recorder's Court for the City of Detroit.

Following the Arraignment on the information before Recorder's Court Judge Harvey F. Tennen, on August 17, 1990, the case was assigned to Judge Leonard Townsend for trial.  On August 24, 1990, substitute Counsel, William Daniel, appeared for the Petitioner.

On December 4, 1990, the jury was selected and sowrn in. (Trial Transcripts (TT)I, 12-4-90, pages 9-68).  During the course of the trial, the decedent's identity was established by his mother, Rosemary Prince. (TT II, 12-5-90, page 41).  According to Doctor Laning Ross Davidson, former Deputy Wayne County Coroner, the Complainant Nathaniel Cunningham died from multiple gunshot wounds.

On 12-4-90 the People called eyewitness Frederick Pettway (TT I, pages 81-177), who detailed the events that occurred shortly after midnight on July 29, 1990, on Camden Street in Detroit:

On 12-4-90, Mr. Petteway testified at trial against the Petitioner. At trial he testified that he knew Nathaniel Cunningham through Nathaniel's sister, who he has a daughter by.  He considered him his brother-in-law.

1

He knew <u>Nathaniel</u> by <u>Pops</u> or <u>Nay-Nay</u>.

Petteway testified that he was 19 and the his birthday was October 2, 1971, and that on August 10, 1990, at Preliminary Examination he testified that his birthday was May 26, 1971. Petteway testified that he use to stay in the neighborhood for about two years on Hampshire, which is a block over from Camden. During that time he would see the Petitioner from time to time, but he did not know him, he just knew his face and he never spoke with him. He knew Petey and Delon for about a year.

On the day in question he was over to visit his daughter and left with Nathaniel around 9:00 pm. and he was with him until the shooting, around midnight. Before the shooting they were riding around in a Ford Escort that Nathaniel was driving, but he did not know that the car was stolen. While they were together <u>Nay-Nay</u> told him that he did not want anyone selling drugs on Newport and Camden. There was a drug house on Newport and Camden and no one sold drugs on that corner. He was looking for Petey(Thomas Ware) and Delon Taylor to tell this to.

Nathaniel saw Petey going into Delon's house while they were driving towards Newport and he parked the car two houses down from Carl's (Carl Foster, who is in a wheelchair) house. He caught Petey and Delon and talked to them. Petteway said he already told him what he was going to tell Petey and Delon, but he did not hear the actual conversation.

After the conversation with <u>Pops</u>, Petey and Delon left the corner and went around the block on Wade, where the Petitioner lived. Petteway said he never saw them go to Petitioner's house, he just saw them go around the corner.

When Nathaniel finished talking to Petey and Delon he came down to the corner of Camden, where Petteway was standing on the other side of the street,

2